UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 21-3572-CBM-E(x) | Date | April 29, 2021 |
|---|---|---|---|

| Title | *Tee Turtle, LLC. v. ABmask et al.* |
|---|---|

Present: The Honorable   CONSUELO B. MARSHALL, UNITED STATES DISTRICT JUDGE

| YOLANDA SKIPPER | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| NONE PRESENT | NONE PRESENT |

**Proceedings:**     **IN CHAMBERS- ORDER RE: PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND ASSET RESTRAINING ORDER [7]**

      The matter before the Court is Plaintiff Tee Turtle, LLC's Ex Parte Application for Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Asset Restraining Order.  (Dkt. No. 7 (the "Application").)  Plaintiff gave Defendants notice of the Application.  (Keyes Decl. ¶¶ 21-22.)

### I.    BACKGROUND

      This action arises from Defendants' alleged infringement of Plaintiff's registered copyrights and trade dress regarding its Reversible Octopus Plushies.  The following are images of Plaintiff's Reversible Octopus Plushies included in the Complaint:



(*See* Compl. ¶ 56.) The Verified Complaint[1] asserts four causes of action: (1) Copyright Infringement, 17 U.S.C. § 101, *et seq*.; (2) Unfair Competition, Lanham Act § 43, 15 U.S.C. § 1125(a); (3) State Statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200 *et seq*.; and (4) Unfair Competition under California Common Law. The 44 Defendants named in the Complaint are merchants located in China who are advertising and selling "knockoffs" of Plaintiff's Reversible Octopus Plushies to customers in the United States through DHGate, a global online marketplace. (Compl. ¶¶ 3-47, 97-100, 105-06, 110-113, 117-18.)

## II. DISCUSSION

### A. Temporary Restraining Order

To obtain a temporary restraining order, Plaintiff has the burden of establishing: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) a balance of equities tips in its favor; and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20; *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the same standard for preliminary injunctions applies to temporary restraining orders).

#### 1. Likelihood of Success on the Merits

Plaintiff contends it is likely to succeed on its copyright and trade dress infringement claims.

##### (a) Copyright Infringement

To establish copyright infringement, Plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050 (9th Cir. 2020). As to the second element, "[i]n the absence of direct evidence of copying, . . . the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020), *cert. denied sub nom. Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453, 208 L. Ed. 2d 145 (2020).

As to ownership, a certificate of registration of Plaintiff's copyright in the Reversible Octopus Plushies was issued by the U.S. Copyright Office. (Compl. ¶ 60, Ex. B.) *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 822 (9th Cir. 2017) ("A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership.").

Access may be demonstrated through evidence that the Plaintiff's work has been widely disseminated. *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). "Evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant medium." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016). Plaintiff offers evidence of 864,000 sales of its Reversible Octopus Plushies since 2017 and shows extensive marketing of its Reversible Octopus Plushies on its website, on social media, at trade shows and conventions, through online retailers such as Amazon.com, and in brick and mortar stores in

---

[1] "[A] verified complaint may serve as an affidavit . . . if it is based on personal knowledge and if it sets forth the requisite facts with specificity." *Moran v. Selig*, 447 F.3d 748, 760 (9th Cir. 2006).

the United States.  (Adams Decl. ¶ 15; Compl. ¶¶ 58, 63-74.)   Plaintiff also demonstrates the Reversible Octopus Plushies have been the number one selling product on Amazon among all toys and games, received significant media attention from various publications and attention on social media, and been featured in numerous TikTok[2] videos, and two of TikTok videos have been viewed over 7.9 million times and 4 million times.  (Compl ¶¶ 68-86.)  Accordingly, Plaintiff demonstrates a likelihood of showing access through widespread dissemination.

     Regarding similarity, Lisa Adams (Plaintiff's Senior Manage of Sales) declares she conducted a visual inspection of each defendant's listings of the infringing products, and confirmed that each Defendant is selling "virtually identical copies" of Plaintiff's Reversible Octopus Plushies that "are nearly indistinguishable from and reproduce every aspect of [Plaintiff's] copyright protected work, including, at least:  (1) oversized spherical head and stubby tentacles; (2) large black eyes with small white dots in the upper right corner; (3) identical expressions on opposing configurations of the toy; (4) the happy faces have large oval eyes, the sad faces have partially closed eyes creating a furrowed brow effect; (5) both the happy and sad expressions have small pursed mouths represented by a uniform line; and (6) the happy and mad expressions are on bodies of contrasting colors."  (Adams Decl. ¶¶ 40-41.) Therefore, Plaintiff demonstrates a likelihood of showing the works share similarities probative of copying.

     Accordingly, Plaintiff shows a likelihood of success on the merits of its copyright infringement claim.

     **(b)     Trade Dress Infringement**

     Plaintiff's second cause of action for unfair competition under the Lanham Act is based on Defendants' alleged infringement of Plaintiff's unregistered trade dress.  To establish infringement of un unregistered trade dress, Plaintiff must demonstrate:  "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products."  *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018).

     <u>Functionality</u>

     The Ninth Circuit follows a two-step process for determining whether a trade dress is nonfunctional.  *Millennium Laboratories, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1130-31 (9th Cir. 2016).  The first step considers four factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture."  *Id*. at 1130.  The second step examines whether protection of the feature "would impose a significant non-reputation-related competitive disadvantage."  *Id*. at 1131.

     As to the first step, Adams declares Plaintiff's Reversible Octopus Plushie is an octopus-shaped toy with contrasting color schemes and alternating faces with dichotomous expressions which has no utilitarian advantage (Adams Decl. ¶ 6), Plaintiff's advertisements focus on how to "show your mood without saying a word" and the "cute" appearance of the toys (*id*. ¶ 14), and making the plushies reversible does not reduce the cost of manufacturing the toy and instead "adds complexity and cost to the process" (*id*. ¶ 10).  Moreover, there are alternative designs available for an octopus-shaped toy.

---

[2] TikTok is video sharing app.

With respect to the second step, Plaintiff argues Defendants will not suffer a non-reputational disadvantage if they cannot copy Plaintiff's trade dress because the trade dress does not affect the cost or quality or provide a significant non-reputational advantage (*see id*. ¶¶ 6, 10). Therefore, Plaintiff demonstrates a likelihood of success that its trade dress is not functional.

### Secondary Meaning

"A trade dress has acquired secondary meaning when consumers associate the design features with a particular producer." *adidas Am., Inc.*, 890 F.3d at 754. Here, Plaintiff demonstrates a likelihood its trade dress has acquired secondary meaning based on evidence regarding its continuous and exclusive use of its trade dress in the Reversible Octopus Plushies since 2017, substantial advertising, the amount of sales, and evidence that each Defendant is selling "virtually identical copies" of Plaintiff's Reversible Octopus Plushies. (Adams Decl. ¶¶ 15, 26, 40-41; Compl. ¶¶ 58, 63-86.) *See id.* ("Some of the relevant factors for determining secondary meaning include the exclusivity, manner, and length of use of the trade dress, the amount and manner of advertising, the amount of sales, and proof of intentional copying by the defendant.").

### Likelihood of Confusion

To determine whether there is a likelihood of confusion, courts consider the following factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003): (1) strength of the trade dress; (2) proximity of the goods; (3) similarity of the trade dress; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the trade dress; and (8) likelihood of expansion of the product lines (the "*Sleekcraft* test"). *See adidas*, 890 F.3d at 755 ("Likelihood of confusion in the trade dress context is evaluated by reference to the same [*Sleekcraft*] factors used in the ordinary trademark context").

Because Plaintiff has demonstrated a likelihood that its trade dress has acquired secondary meaning, its trade dress is likely strong. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1147 (9th Cir. 2011) (considering evidence regarding secondary meaning in determining strength of the mark); *Glob. Tobacco, LLC v. R.K. Co.*, 2015 WL 12911451, at *5 (C.D. Cal. Sept. 24, 2015) ("Plaintiff's showing that the Clipper Trade Dress has acquired secondary meaning, and thus commercial strength, weighs in favor of a likelihood of confusion.").

As to proximity of the goods and similarity of the trade dress, Plaintiff demonstrates Defendants are selling "virtually identical copies" of Plaintiff's Reversible Octopus Plushies. (Adams Decl. ¶ 41.) *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

While Plaintiff does not submit evidence of actual confusion, "actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." *Network Automation*, 638 F.3d at 1151.

Regarding marketing channels used, while Plaintiff demonstrates the parties both use online advertising to sell their products (*see* Adams Decl. ¶¶ 8, 13; Compl. ¶¶ 63, 70, 105, Ex. O; Kelly Decl. Ex. B), "given the broad use of the Internet today," "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel [such as the internet] does not

shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151 (finding "the district court's determination that because both parties advertise on the Internet this [*Sleekcraft*] factor weighed in favor of Systems was incorrect").

Purchasers are less likely to exercise care because Plaintiff demonstrates Defendants' allegedly infringing products are sold for a few cents or a few dollars while Plaintiff's retail price for the Reversible Octopus Plushie is $15. (Lewis Decl. ¶ 19.) *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) ("when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely").

As to intent, Plaintiff offers evidence Defendants' infringing products are "virtually identical copies" (Adams ¶ 41), and that some defendants are using Plaintiff's own marketing materials to promote their infringing products (Compl. ¶¶ 110, 111), which raises an inference of bad intent. *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1163 (9th Cir. 2009) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."); *Adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1209 (D. Or. 2002) (finding there was "an inference of intentional copying" where the defendants' trade dress "incorporates significantly more similarities to, than differences from" the plaintiff's trade dress). Even if no inference of bad intent could be made, intent to confuse consumers is not required for a finding of infringement. *One Indus.*, 578 F.3d at 1163.

The likelihood of expansion of the product lines factor is unimportant here because the parties sell the same product (octopus-shaped reversible plushie toys). *See Brookfield,* 174 F.3d at 1060 ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.").

Therefore, Plaintiff demonstrates the *Sleekcraft* factors weigh in favor of a likelihood of confusion.

Accordingly, Plaintiff also shows a likelihood of success on its trade dress infringement claim.

### 2. Irreparable Harm

Adams declares Defendants' infringing products "are of inferior quality," and consumers have provided negative reviews regarding knockoffs of Plaintiff's Reversible Octopus Plushie and given Plaintiff a negative rating when receiving the "inferior knock off products." (Adams Decl. ¶¶ 41, 44, 45.) Defendants' products do not contain any safety labels. (Compl. ¶ 120.) Adams also declares the negative reviews have harmed Plaintiff's reputation and goodwill, including harming Plaintiff's ability to execute deals with large retailers, and that two national retailers have expressed concerns about the knockoffs being sold online. (*Id*. ¶ 46.) Plaintiff also submits a declaration from its expert witness Justin Lewis who declares Reversible Octopus Plushies are part of a "fad market" wherein a company that creates a fad product "has a short window of time in which to capitalize on the product's popularity, after which the demand for the product may decline," and that Plaintiff "likely will not be able to recoup price erosion, lost market share, or reputational harm, nor will it be able to capitalize on the popularity to strengthen the Tee Turtle brand and business in an enduring way," and Defendants' sale of infringing products of "considerably lower quality and cheaper prices" of a few cents or few dollars compared to Plaintiff's retail pricing of $15 irreparably harms Plaintiff by causing price erosion, damage to Plaintiff's reputation, and "drowning out" Plaintiff from the market. (Lewis Decl. ¶¶ 1, 7-8, 12, 15, 17-19, 23-24.)

Therefore, Plaintiff demonstrates it will be irreparably harmed absent a temporary injunction. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."); *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 F. App'x 393, 396 (9th Cir. 2018) (district court did not abuse its discretion in granting permanent injunction upon jury's finding the sale of counterfeit, low-quality products would harm the plaintiff's reputation); ); *PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.*, 2020 WL 6694348, at *4 (C.D. Cal. Oct. 29, 2020) ("irreparable injury occurred as a result of Defendant's unauthorized sale of counterfeit products . . . , which deprived Plaintiff of the ability to control its reputation").

### 3. Balance of Equities

"Where the only hardship that the defendant[s] will suffer is lost profits from an activity which has been shown likely to be infringing," no equitable considerations support defendants. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 F. App'x 288 (9th Cir. 2009); *Windsurfing Int'l v. AMF*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). Plaintiff, on the other hand, would be harmed from diminished sales and injury to its good will and reputation based on Defendants' sale of the infringing products. Accordingly, the balance of equities favors issuance of a temporary restraining order.

### 4. Public Interest

Here, the public interest weighs in favor of a temporary restraining order. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) ("the public has a compelling interest in protecting copyright owners' marketable rights to their work"); *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products.").

Accordingly, Plaintiff meets its burden of demonstrating a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest. *See Winter*, 555 U.S. at 20. Therefore, the Court **GRANTS** the Application for a temporary restraining order.

**B.     Order to Show Cause re: Preliminary Injunction**

Because Plaintiff has demonstrated the *Winter* factors have been met for a preliminary injunction, the Court **GRANTS** Plaintiff's Application for an order to show cause why a preliminary injunction should not be issued. *See Winter*, 555 U.S. at 20.

**C.     Asset Restraining Order**

A prejudgment asset freeze "is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

The Court finds Plaintiff has not demonstrated at this stage a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages. Accordingly, the Court **DENIES** Plaintiff's request for an Asset Restraining Order.

### III. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. The Court **DENIES** Plaintiff's Ex Parte Application for an Asset Restraining Order.

The Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue are set forth in a separate order.

**IT IS SO ORDERED.**